UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11725-RGS

THERESA MARQUEZ and WILL ALFREDO ARRIAGA

v.

WELLS FARGO BANK, N.A.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

JANUARY 8, 2013

STEARNS, D.J.

Defendant Wells Fargo moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the sole count of plaintiffs Theresa Marquez and Will Alfredo Arriaga's Second Amended Complaint (SAC). For the reasons stated below, the motion will be granted.

BACKGROUND

The following facts are drawn from the complaint and documents attached as exhibits or incorporated by reference therein. *See Watterson v. Page,* 987 F.2d 1, 3-4 (1st Cir. 1993).

On November 30, 2006, Marquez and Arriaga secured a five-year note from Community Lending, Inc., Wells Fargo's predecessor-in-interest, on a residential

property located in Revere, Massachusetts. Sometime prior to December of 2009, plaintiffs defaulted on the note. On February 2, 2010, Wells Fargo invited plaintiffs to apply for a loan modification through the Home Affordable Modification Program (HAMP). The offer letter explained that "[i]f you qualify under the federal government's [HAMP] program and comply with the terms of the Trial Period Plan [TPP], [Wells Fargo] will modify your mortgage loan and you can avoid foreclosure." Pls.' Ex. at 3. An attached checklist explained that "[t]o accept this offer, and see if you qualify for a Home Affordable Modification," an applicant was required to return copies of the enclosed TPP agreement and Hardship Affidavit, signed by all borrowers, together with documentation of the income of each borrower and the first month's trial period payment. *Id.* at 4.

Marquez, with the assistance of counsel, prepared and returned the signed TPP agreement, an executed Hardship Affidavit, and documentation of income, "as required by [the checklist.]" SAC at 2. She also timely made the trial payments in March, April, and May. However, on September 10, 2010, Wells Fargo sent Marquez a letter notifying her that her application for a permanent loan modification had been denied. Marquez nevertheless continued to send Wells Fargo the trial payments until she received a return check letter on November 19, 2010, which stated that her payment was being declined because "the funds [did] not represent the total amount

owed due on [her] account." *Id.* at 3. She subsequently filed two separate HAMP application packages in April and June of 2011, both of which were also denied.

Marquez filed a three-count complaint against Wells Fargo on August 29, 2012, alleging that the bank had violated HAMP and the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, when it failed to offer her a permanent loan modification after she had returned the TPP agreement and complied with its conditions in good faith, refused to evaluate fairly her subsequent HAMP applications, and neglected to provide Fair and Accurate Credit Transactions Act (FACTA) disclosures during the loan application and origination process. The court granted Wells Fargo's motion to dismiss for failure to state a claim on November 8, 2012, but permitted Marquez fourteen (14) days in which to file an amended complaint. *See Marquez v. Wells Fargo*, 2012 WL 5457343 (D. Mass. Nov. 8, 2012) (concluding that plaintiff lacked standing to enforce the terms of HAMP and that her Mass. Gen. Laws ch. 93A claim was untimely). Marquez did so, and further amended the complaint to include Arriaga, her co-mortgagor, as a plaintiff. Wells Fargo now moves to dismiss the Second Amended Complaint, in which plaintiffs allege a breach of contract based on Wells Fargo's failure to convert their TPP agreement into a permanent loan modification.

## DISCUSSION

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court has emphasized, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal citations and quotation marks omitted).

Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997), quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988) (internal quotation marks omitted). To assert a valid breach of contract claim, a plaintiff must prove: (1) there was a valid contract; (2) the defendant breached the contract; and (3) the plaintiff suffered damage as a result of the breach. *Singarella v. Boston*, 342 Mass. 385, 387 (1961). The elements of a contract are "offer, acceptance, and an exchange of consideration or meeting of minds." *Northrup v. Brigham*, 63 Mass. App. Ct. 362, 367 (2005)

Wells Fargo argues that plaintiffs' breach of contract claim fails as a matter of law because plaintiffs have not, and indeed cannot, allege facts that demonstrate the existence of a valid contract. Though it acknowledges that this court has previously recognized claims arising from the breach of TPP agreements, *see In re JPMorgan Chase Mortg. Mod. Litig.*, 2012 WL 3059377, at *8 (D. Mass. July 27, 2012); *Durmic v. J.P. Morgan Chase Bank, N.A.*, 2012 WL 4825632, at *3-4 (D. Mass. Nov. 24, 2010), Wells Fargo challenges whether those rulings apply in the present case, where, it contends, the complaint is devoid of any allegations that co-mortgagor Arriaga signed the TPP agreement or provided Wells Fargo with any of the documentation required by the TPP offer. It avers that absent such allegations, there can be no suggestion of a binding contract.

Plaintiffs in their opposition admit that Arriaga failed to sign the TPP and Hardship Affidavit and to provide documentation of his income.[1] This admission proves fatal to the claim that a valid contract was formed. As explained by the

---

[1] The complaint alleges that Marquez signed and enclosed "(1) . . . the TPP as required by line item 1 [of the checklist]; (2) . . . the Hardship Affidavit as required by line item 3; (3) . . . dated copies of the [Request for Transcript of Tax Return] for each borrower and joint tax filer as required by line item 4 and (4) . . . documentation to verify the income of each borrower as required by line item 5 (pay stubs)." SAC at 2. Line items 1 and 3, in turn, require that the documents be "signed by all borrowers." Pls.' Ex. at 4. Given plaintiffs' admission, the court need not decide whether these allegations might be generously construed to satisfy notice pleading standards notwithstanding their imprecision.

Massachusetts Appeals Court,

> The offeror has full control over his offer and may prescribe a particular and exclusive mode of acceptance. To be effective the acceptance must be made in the manner required by the offer. *Lewis v. Browning*, 130 Mass. 173 (1881); *Horne v. Niver*, 168 Mass. 4, 5 (1897). *Lawrence v. Rosenberg*, 238 Mass. 138, 141 (1921). *See* 1 Williston, Contracts s 76 (3rd ed. 1957). And if a purported acceptance substantially varies from the terms of the offer it is ineffective, creating no binding agreement. *Bank of United States v. Thomson & Kelly Co.*, 290 Mass. 224, 228 (1935). *See Peretz v. Watson*, 3 Mass.App. 727, 728 (1975).

*David J. Tierney, JR., Inc. v. T. Wellington Carpets, Inc.*, 8 Mass. App. Ct. 237, 240 (1979); *accord Northampton Inst. For Savings v. Putnam*, 313 Mass. 1, 7 (1943) ("[A]n acceptance of an offer must be in accordance with its terms, that is, by full performance by the offeree, in order that a contract may come into existence . . . ."). Here, Wells Fargo prescribed the specific steps necessary to accept the TPP offer. In particular, under bolded language stating "[t]o accept this offer," the TPP checklist indicated that the applicant must send to Wells Fargo "[t]wo copies of the enclosed [TPP] signed by all borrowers" and "[d]ocumentation to verify the income of each borrower." Pls.' Ex. at 4. Furthermore, both the "Frequently Asked Questions" section of the offer and the TPP agreement contained language specifying that all parties who signed the original loan agreements were required to sign the TPP and other modification documents. *Id.* at 6, 9. Thus, notwithstanding plaintiffs' protestations to the contrary, the offer plainly required that Arriaga, as well as

Marquez, comply with the terms of the conditional offer.[2] *Cf. David J. Tierney, JR., Inc.,* 8 Mass. App. Ct. at 240 (finding permissible "other forms of acceptance" only where the offeror has failed to "clearly express[], in the terms of the communicated offer itself, his intention to exclude all other modes of acceptance." (internal quotations marks omitted)).

In an attempt to blunt the force of this conclusion, plaintiffs argue in their opposition that Wells Fargo should be equitably estopped from declining a permanent modification or, in the alternative, be found to have waived the requirement of a co-borrower signature and documentation given its acceptance of trial payments after the September 10, 2010 rejection letter. Specifically, plaintiffs assert that "Wells Fargo, by continuing to accept [plaintiffs'] TPP trial payments over a period of *nine* (9) consecutive months, created a reasonable expectation in the mind of [plaintiffs] that Ms. Marquez's acceptance of the TPP offer terms was valid." Pls.' Opp'n at 1. Waiver, however, cannot form a contract where none exists in the first place.

---

[2] As Wells Fargo points out, there are "practical reasons why a lender cannot modify half a loan. Most obviously, the lender needs information on both borrowers in order to properly assess the proposed modification of terms in the loan obligation. Similarly, information from both borrowers i[s] needed to determine whether the loan at issue qualifies for a modification under the HAMP program." Def.'s Reply at 3-4.

Nor is there any traction to plaintiffs' estoppel claim.[3] "The theory of promissory estoppel . . . permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." *Loranger Constr.,* 6 Mass. App. Ct. at 154. As Massachusetts courts have emphasized, "[a]n essential element under the promissory estoppel theory is that there be an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation." *Pappas Indus. Parks, Inc. v. Psarros*, 24 Mass. App. Ct. 596, 599 (1987). The only unambiguous promise here, however, was the assurance that a modification would issue "once [Wells Fargo was] able to confirm [plaintiffs'] income and eligibility for the program." Pls.' Ex. at 5. Neither

---

[3] Plaintiffs mistakenly label the claim one of equitable estoppel when they mean to assert a claim of promissory estoppel. The doctrine of equitable estoppel permits recovery "where there has been reliance upon the misrepresentation of past or present facts," as distinguished from promissory estoppel "where reliance has been placed upon statements of future intent." *Loranger Constr. Corp. v. E. F. Hauserman Co.*, 6 Mass. App. Ct. 152, 155 (1977), *aff'd*, 376 Mass. 757 (Mass. 1978); *accord Boylston Dev. Grp., Inc. v. 22 Boylston St. Corp.*, 412 Mass. 531, 542 n.17 (1992). Here there are no false statements of past fact, but rather an alleged promise of a future fact, that is, an agreement after a certain period of time to enter into a contract.

Wells Fargo's four months' response time[4] nor its passive acceptance of plaintiffs' TPP payments subsequent to the September denial notification renders plaintiffs' belief that a permanent modification was forthcoming a reasonable one, given their failure to provide the required signatures and documentation. Simply put, a party cannot create contractual obligations by unilateral fiat. *Cf. Kiely v. Raytheon Co.*, 105 F.3d 734 (1st Cir. 1997) ("The applicable Massachusetts law recognizes that a promisee's reasonable and detrimental reliance on a promise may serve as a substitute for consideration and render the promise 'enforceable pursuant to a traditional contract theory,' but only if the promisee can prove 'all the necessary elements of a contract other than consideration.'" (quoting *Rhode Island Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. 841, 850 (1995))).

ORDER

For the foregoing reasons, Wells Fargo's motion to dismiss is <u>ALLOWED</u> with prejudice. The Clerk will enter an Order of Dismissal and close the case.

SO ORDERED.

---

[4] The court acknowledges that at least one court has recognized a promissory estoppel claim premised on a bank's failure to respond to an applicant's loan modification request by the end of the three-month trial period. *See Fletcher v. OneWest Bank, FSB*, 2012 WL 5199632, at *4-5 (N.D. Ill. Oct. 22, 2012). There, however, unlike here, it was uncontested that the plaintiff had fully complied with the terms of the TPP offer.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE